The opinion of the court was delivered by
Miller, J.
This appeal is by the defendant from the judgment for damages claimed by the plaintiff for the death of his minor son killed by lumber falling on him in one of the defendant’s cars, the son being engaged at the time of the accident in defendant’s service, and the accident due, it is charged, to the negligence of defendant’s agents.
The deceased with two others had been employed by defendant to transfer from the car of another company the lumber to be transported by defendant. The cars, one from which the lumber was to be transferred, and the other, that of defendant’s, into which the lumber was to be loaded, were placed together on the spur crack of defendant’s main line, and the deceased and his companions in the work were to receive and place in proper position in the defendant’s ear the lumber as it was passed to them from the adjoining car. "While thus engaged it became necessary to move the cars, accomplished by the switch engine of defendants attached to other cars moved so as to couple with the two cars, in one of which the deceased was at work. In making the coupling the jar caused the fall of the lumber which deceased and his companions had placed in tiers on either side of the car, on one side reaching to the top *1168 of the ear, on the other much lower, there being a passage way between in which the deceased was crushed by the heavy planks from the top of the higher tiers, dislodged by the jar and falling on him, inflicting the internal injuries from which he died. The testimony is, that when the deceased and his companions were put to work they received directions how to load the car. The companion of the deceased who escaped injury testified that he laid the lumber eight-inch plank on one side, the eighteen-inch plank on the other “stacked,” as the witness expresses it, “ in steps-like keeping it so it would be braced all the way up,” and had one tier plum up to the top and then coming down in steps. “We had,” he testifies, “ some extra wide plank we could not fit in the tier without its toppling over, and we put it down near the door on the other side.” Describing the fall and its result, the witness testified the lumber fell on deceased from his neck to his feet, scattered and spread all over him; he was pinned between two piles, the pile three feet high under him. Neither witness or deceased had ever done that kind of work before. The witness who directed the loading, of long experience in that business, testifies: “ There were two qualities of lumber eight-inch and twelve-inch. I put the twelve-inch on the west side, on the east the eight-inch; showed them (the deceased and his companion) how to do that, so as to get all the lumber in without any trouble; got them to put two feet of the twelve-inch lumber on this side, on the other two and a half feet high; told them they now knew how to do it and went away, not returning till after the accident,” which he describes thus: “ The twelve-inch plank was two feet high on the west side, and eighteen or nineteen planks of the eight-inch slipped right over and pinned the fellow.” The witness further testifies, when he left the car the lumber was all right (i. e., the loading), how it was after he can not say; and he states that if the loading had been in the proper method no accident would have happened by the “ bumping” caused by loading.
The reason for moving the two cars was to clear the public crossing, over which the spur line extended. It is claimed on behalf of plaintiff that the switch engine ran at a high speed to effect the coupling of the cars to which it was attached with the two cars; that there being a number of cars moved by the switch engine and the car from which the lumber was being unloaded intervening between the end car of the switch train, and that in which the *1169 defendant was engaged, that the jar causing the fall of the lumber was of unusual violence. There is testimony in the record to sustain defendant’s contention as to the speed of the switch engine. The testimony of the locomotive fireman on the engine and the switch-man who made the coupling, is that the coupling was light and the engine was run slow. We have given all the testimony on this branch of the case careful consideration, but the fact of controlling importance in our appreciation is that the coupling was made with violence sufficient to cause the fall of the lumber and kill the deceased while at his work.
It is urged with earnestness on behalf of defendant, that this accident was due to the carelessness of the deceased in loading the car with lumber to the top on one side and knee high on the other. A mass of testimony has been produced to show that lumber carried on railway cars is usually loaded so as to be level; that if loaded in this manner it could not have fallen, and hence the defence of contributory negligence, based on the method of loading of the deceased and the others engaged with him in the work.
It seems to us ordinary prudence would dictate that a car on a spur track in which men are employed in loading heavy lumber, passed to them from another ear, should not be exposed to any contact with moving cars; at least, not without warning to the men of the risk incident to such contact. In our appreciation the jolt necessarily attendant in coupling cars is apt to endanger the limbs or life of the men engaged in handling heavy lumber in the car subjected to the jolt. In this case the loss of the life of one of the men thus employed was the consequence of the non-observance by the defendant’s agents of that care which reason and the law enjoin on them. It is claimed the yardmaster or others charged with the movements of the cars had no knowledge the men were in the ear, and that they had closed the door of the car on one side so that they could not be seen. There is no testimony at all satisfactory the door was closed. If it was the indications of the two cars on the spur track and the passing of lumber from one ear. to the other in progress and open to the view of all was, we think, abundant notice to those on whom rested the obligation of care and the requisite observation for the proper discharge of their duties. Besides, the men had been put in the car to do the work by defendant’s agents, and that carried knowledge, actual or constructive, to all the railroad *1170 employees charged with the movement of the cars on the spur track. With the requirement of moving the train with prudence and care, so as to avoid such accidents as occasioned the death of the deceased, the record, in our opinion, shows a plain disregard of that duty by defendant’s agents. Pierce on Railroads, p. 376; Am. Digest for 1889, p. 3286; 32 Mo. App., p. 413.
We have, however, the defence of contributory negligence based on the manner the defendant and his associates in the work loaded the lumber. It should, it is insisted, have been loaded so as to be on a level, and it is urged that instructions to that effect were given to the deceased; testimony had been produced to show that is the usual method of loading lumber trains, and if thus loaded, it is claimed no jolt of the car could have caused the fall. It Is not clear to our minds that lumber of different dimensions to be laid as it came from one to the other car, could have been kept on a level at all times while being laid. The jolt came while the loading was in progress, not after it was completed. What the effect of the jolt would have been if the laying of the lumber had been completed in the manner begun is purely speculative. We have given the defence full consideration. We can not assume negligence in the loading by a test to be applied, if at all, not until the loading was completed. The proximate cause of the death was the jolt which came at the time when the deceased had a right to expect complete immunity from the danger that cost him his life.
There remains the question of damages. The deceased contributed, though in an inconsiderable degree, to the support of an aged father and a sister. The injuries from which deceased died caused him twelve hours of pain. We ñnd no place in this case for exemplary damages against a corporation for its servants’ neglect. Sedgwick on Damages, p. 671, notes at foot; Milwaukee, etc., R. R. Co. vs. Arms et al., 91 U. S. 494. The jury gave five thousand dollars; the court deciding the case after the verdict was set aside awarded two thousand dollars. Under all the circumstances we think the judgment should be increased to twenty-five hundred dollars.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff recover from defendaut twenty-five hundred dollars with costs.
Nicholls, C. J., absent; ill.